**George and Mary DALY et al., Plaintiffs,**

**v.**

**John A. VOLPE et al., Defendants.**

**Civ. A. No. 9490.**

United States District Court,
W. D. Washington,
at Seattle.

April 9, 1971.

Irving Clark, Jr., Seattle, Wash., for plaintiffs.

Stan Pitkin, U. S. Atty., Albert E. Stephan, First Asst. U. S. Atty., Seattle, Wash., for Federal defendants.

Thomas R. Garlington, Asst. Atty. Gen., Tumwater, Wash., for State defendants.

## MEMORANDUM OF DECISION

BEEKS, District Judge.

This action involves that portion of interstate highway I–90 proposed to by-pass the congested business area of the Town of North Bend, Washington. Plaintiffs, residents of North Bend and immediate vicinity, contend the value of their property, as well as their use of nearby recreational and wildlife facilities will be impaired by construction of the highway and seek a preliminary injunction enjoining defendants from proceeding further with said by-pass. Plaintiffs contend that defendants have failed to comply with Section 102(2) (C) of the National Environmental Policy Act of 1969 (herein NEPA).[1] Specifically, they contend that State defendants[2] failed to prepare an environmental statement prior to holding the final corridor (location) hearing, and that Federal defendants[3] gave location approval of the highway even though there had not been compliance with the procedures outlined in interim regulations promulgated by the Department of Transportation (DOT) and by the Federal Highway Administration (FHWA) both of which were then in force. In order to remedy these alleged deficiencies, plaintiffs seek the aforesaid injunctive relief until there has been compliance with the regulations.

The threshold question is whether plaintiffs have established a reasonable probability of eventual success on the merits.

Controversy over the location of the portion of the highway involved herein has raged for more than a decade. Although the Washington State Department of Highways (SHD) held its first public corridor hearing in April of 1957, the project's more recent history begins with the second corridor hearing held on December 3, 1969. As a result of this hearing, SHD concluded that further studies should be made of alternate routes. In preparation for a third corridor hearing, SHD mailed letters to some 86 interested agencies, groups, and individuals informing them of the several corridors under consideration, the date of the third corridor hearing, and requesting comments on the proposed corridors. In a further attempt to elicit comments from interested persons, SHD held numerous informational meetings with the North Bend Town Council, North Bend Planning Commission, a Citizens Coordinating Committee, and others, during the summer of 1970. In addition, SHD prepared two large studies entitled "Environmental Report of the Upper Snoqualmie Valley," and "Advance Planning Study, West Snoqualmie to Tanner." The former was available for the public's perusal prior to the third corridor hearing, was explained in detail during at least one well attended local meeting with residents of North Bend, and copies thereof were distributed to interested persons prior to the corridor hearing.[4] After this prepara-

1. 42 U.S.C. § 4332(2) (C) (Supp. 1971).

2. The Washington State Highway Commission, Washington State Department of Highways; George D. Zahn, as Chairman of the Washington State Highway Commission, and G. H. Andrews, as Director of the Washington State Department of Highways.

3. John A. Volpe, as Secretary of Transportation, Ralph M. Phillips as Regional Federal Highway Administrator for Region X, United States Department of

Transportation, J. P. Clark, Division Engineer, Federal Highway Administration, United States Department of Transportation.

4. The latter study, although not available at the corridor hearing, incorporated comments received by SHD from interested agencies, groups, and individuals, and was, in combination with the former study, submitted to the Division Engineer to be considered in granting location approval.

tion, the third corridor hearing was held as planned on September 1, 1970.

Thereafter, DOT issued interim regulations dated October 7, 1970, implementing Section 102(2) (C) of NEPA.[5] These regulations provided that an environmental statement "be prepared at the earliest practicable point in time * * * so that the analysis of the environmental effects and the exploration of alternatives with respect thereto are significant inputs to the decision-making process."[6] They further required that the draft environmental statement be circulated for comment to all interested Federal agencies. More specific implementation was deferred, however, to each operating agency, which, in this case was FHWA. Upon receipt of DOT regulations, SHD prepared a draft environmental statement and, on November 25, 1970, transmitted it, together with a request for location approval, to the Division Engineer, FHWA. The Division Engineer gave the requested location approval on November 30, 1970.

Shortly prior to the date of said approval the Associate Administrator, Office of Right-of-Way and Environment, FHWA, issued a draft of Interim Guidelines, the purpose of which was to more specifically implement Section 102(2) (C), NEPA as directed by DOT. The draft is dated November 24, 1970, and the letter of transmittal is dated November 30, 1970. Said documents, however, were not received by the Division Engineer until after his approval of the highway location.[7] In·pertinent part, the draft guidelines provided that the final environmental statement incorporating comments received with respect thereto from "appropriate" agencies was to be submitted with the request of SHD for location approval. They further provided that "[i]f location approval was given prior to the date of this memorandum [November 24, 1970], the * * * final environmental statement

* * * shall be included with the SHD's request for design approval."[8] Since the receipt of these guidelines, SHD has prepared and submitted to the Division Engineer a final environmental statement which defendants contend complies with NEPA and its implementing regulations.

In essence, plaintiffs' objections to the procedures followed are twofold: first, that a draft environmental statement was not prepared prior to the third corridor hearing, hence comments thereon were not a part of the decision-making process as contemplated by NEPA and its implementing regulations; and second, that location approval was given before a final environmental statement incorporating comments from agencies and persons was submitted, as required by the aforesaid guidelines. These objections shall be considered together and in considering them the court will assume, arguendo, that the guidelines were applicable to the situation under discussion.

■■ So assuming, it would appear that there has not been strict compliance with the guidelines. I am of the opinion, however, that there has been substantial compliance with the policies underlying NEPA and its implementing regulations. As applied to highway projects, the purpose of preparing an environmental statement and circulating it among interested agencies is to insure careful analysis of the effects the highway may have upon the environment. The extensive correspondence, consultations, meetings and hearings held with respect to this project, together with the two studies prepared analyzing the several proposed routes, convinces me that the objectives of NEPA have been achieved, and that any failure of exact compliance with the Interim Guidelines was non-prejudicial. Accordingly, I find that plaintiffs have not established a probability of eventual success on the

---

5. DOT Order No. 5610.1.

6. *Id.* at para. 7d.

7. The draft was received by SHD on December 7, 1970.

8. Interim Guidelines, at para. 5c.

merits, a prerequisite for issuance of a preliminary injunction.

In addition, I am of the opinion that injury to the community of North Bend and to the citizens of the State of Washington by further delaying construction of the highway, will far outweigh any injury plaintiffs might sustain by allowing defendants to continue with this long delayed project.

A preliminary injunction is denied.

This memorandum shall constitute Findings of Fact and Conclusions of Law as provided by Rule 52, Federal Rules of Civil Procedure, and it may stand as the Order of the Court with respect to the rulings made herein.